IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KASAUNDRA BOLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-3032-CV-S-RED |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Kasaundra Boling ("Plaintiff") seeks judicial review of the Commissioner's denial of her request for a period of disability and disability insurance benefits for supplemental security income under Title XVI. Plaintiff has exhausted all of her administrative remedies, and judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge (the "ALJ").[1]

## BACKGROUND

The parties present complete facts and arguments in their briefs. The ALJ's decision also sets forth comprehensive findings of fact and conclusions of law. The parties' facts and arguments and the ALJ's findings and conclusions are repeated herein only as necessary to explain the Court's decision.

## LEGAL STANDARD

The Court's review is limited to determining whether the Commissioner applied the correct

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a *de novo* review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands

of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that she is disabled. If the claimant is not able to perform her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

## ANALYSIS

Plaintiff raises four main challenges to the ALJ's determination that she is not disabled. Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility; in failing to afford appropriate weight to Plaintiff's treating physician; by improperly evaluating Plaintiff's RFC; and, finally, by failing to consider new evidence which was submitted to the appeals council.

**I.      The ALJ properly considered Plaintiff's credibility.**

Plaintiff argues that the ALJ erred by improperly evaluating Plaintiff's credibility. When evaluating Plaintiff's credibility, the ALJ considered Plaintiff's subjective complaints; her daily activities; Plaintiff's medical records; and her work history.

Credibility questions are "primarily for the ALJ to decide, not the courts." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)(internal quotations omitted). In weighing a claimant's credibility, the ALJ must "consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain,

3

precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Here, the evidence of record is inconsistent with Plaintiff's subjective complaints. Plaintiff's alleged disability began on January 10, 2007. However, on January 9, 2007, Plaintiff visited Ronald Vance, M.D. and made no mention of any mental issues. Nonetheless, on January 10, 2007, Plaintiff visited Dr. Findley for hallucinations, delusions and mood swings and stated that she has had these problems for over five years.

Dr. Vance's treatment notes from October 2007 to September 2008 illustrate that Plaintiff was mentally stable. For example, on September 10, 2008, Dr. Vance noted that Plaintiff had a normal mood and affect and that her bipolar disorder was stable and improved. Dr. Vance also noted that Plaintiff's bipolar disorder was stable and improved on June 10, 2008; May 20, 2008; April 15, 2008; and April 1, 2008. On May 20, 2008, Dr. Vance noted that there was no evidence of hallucinations, delusions, obsessions or homicidal or suicidal ideations; Dr. Vance noted this again on April 1, 2008 and again on April 28, 2008. Moreover, Dr. Vance's notes illustrate that he performed mental status health exams of Plaintiff on: January 23, 2007; October 6, 2007; November 9, 2007; March 18, 2008; April 1, 2008; April 15, 2008; April 29, 2008; May 20, 2008; June 10, 2008; July 1, 2008; September 10, 2008; and October 30, 2008, concluding that Plaintiff's mood and affect were either appropriate or normal. Furthermore, Dr. Vance concluded on July 1, 2008 that a neurological evaluation of Plaintiff revealed a normal attention span and ability to concentrate and, further, concluded on April 1, 2008 and April 15, 2008 that Plaintiff's thought content was normal with the ability to perform basic computations and apply abstract reasoning. Moreover, the Court notes that the medical records consistently indicate that Plaintiff's exacerbated symptoms tend to

be linked to Plaintiff's non-compliance with her medication. For example, this is seen on January 15, 2009; April 25, 2008; and July 17, 2008.

Furthermore, Plaintiff's daily living activities are inconsistent with her subjective complaints. On February 9, 2007, Plaintiff testified that her daily living activities included taking care of herself, her two children and her two cats, going to classes from 9:30 - 2:15 three days a week, doing homework and preparing complete meals daily; she additionally testified that she cleans, does laundry, does the dishes, and shops weekly. *See Brown v. Astrue*, 611 F.3d 941, 955-56 (8th Cir. 2010)(concluding that the following activities were inconsistent with plaintiff's claims of mental disability: "'getting her daughter off to school, cleaning, cooking at times, going to workout at times, visiting her mother, going to church almost every Sunday; and Bible class some days'" and, further the fact that plaintiff "'takes care of her own personal needs, prepares meals three times a week, does the laundry, shops for groceries, drives, pays bills, and talks with others on the telephone a couple times a week.'"). Moreover, it should be noted that, during Plaintiff's alleged disability period, she was able to finish college.

Finally, when evaluating Plaintiff's credibility, the ALJ considered Plaintiff's sporadic work history and found that it was inconsistent with an individual who had the motivation to work. A claimant's credibility is lessened by a poor work history as "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)(citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993)). The ALJ also considered the fact that Plaintiff's prospective social security benefits would exceed the amount that she had earned when she was working. *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002). However, the motivation of a claimant should not be dispositive but, rather, "a claimant's financial

motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility." *Ramirez*, 292 F.3d at 581-82 n. 4. Plaintiff's maximum earnings for the years 2001 through 2007 were $1190.00, which she earned in 2001. Moreover, Plaintiff did not work in 2000, 2002, 2004 or 2006. The Court notes that Plaintiff was in school for the majority of the relevant years but considers this factor in conjunction with the record evidence as a whole when determining whether the ALJ erred in determining Plaintiff's credibility. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984))(in considering a Plaintiff's credibility the ALJ must "consider all of the evidence, including prior work records . . .").

For the above stated reasons, the Court finds that the ALJ made a proper credibility determination with regard to Plaintiff. *See Ellis v. Barnhart*, 392 F.3d 988, 966 (8th Cir. 2005) ("Where adequately explained and supported, credibility findings are for the ALJ to make.").

## II. The ALJ afforded appropriate weight to Plaintiff's treating physician.

Generally, "'a treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000)). The ALJ notes, when determining Plaintiff's RFC, that the opinion of Dr. Findley, as supported by Dr. Oloman, Plaintiff's treating physician, is not supported by any treatment notes or by the results of clinical or diagnostic testing and is inconsistent with the evidence as a whole.

Though Dr. Findley is Plaintiff's treating mental health physician, Dr. Findley's medical

6

source statement ("MSS") is not consistent with the evidence as a whole, while Dr. Singer's MSS is consistent with the evidence as a whole. *Juszczyk v. Astrue*, 542 F.3d 626 (8th Cir. 2008)("ALJs are not obliged to defer to treating physician's medical opinions unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record."). As set forth above, Dr. Findley's MSS is not consistent with Dr. Vance's observations of Plaintiff. Dr. Vance's treatment notes from October 2007 to September 2008 illustrate that Plaintiff was mentally stable. Moreover, Dr. Vance's treatment notes illustrate that he performed mental status health exams of Plaintiff on: January 23, 2007; October 6, 2007; November 9, 2007; March 18, 2008; April 1, 2008; April 15, 2008; April 29, 2008; May 20, 2008; June 10, 2008; July 1, 2008; September 10, 2008; and October 30, 2008, concluding that Plaintiff's mood and affect were either appropriate or normal. Furthermore, Dr. Vance concluded on July 1, 2008 that a neurological evaluation of Plaintiff revealed a normal attention span and ability to concentrate and, further, concluded on April 1, 2008 and April 15, 2008 that Plaintiff's thought content was normal with the ability to perform basic computations and to apply abstract reasoning.

The record also illustrates that Dr. Findley's MSS is based on Plaintiff's subjective complaints. For example, Dr. Findley's MSS notes that the support for a set of her opinions were based on Plaintiff's "report[s] of increased memory problems." As noted above, Plaintiff's subjective complaints are not fully credible. *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011)(concluding that the mental health doctor's evaluation was less than credible when his "evaluation appeared to be based, at least in part, on [claimant's] self-reported symptoms and, thus, insofar as those reported symptoms were found to be less than credible, [the doctor's] report was

7

rendered less than credible.").

Plaintiff further argues that the ALJ erred in relying upon the opinions of Dr. Singer as the evidence clearly establishes that Plaintiff suffered from hallucinations, depression, schizoaffective disorder, and anxiety disorder. However, when coming to its conclusion, the ALJ concluded that Plaintiff had the severe impairments of schizoaffective disorder, social anxiety disorder, panic disorder with agoraphobia, a history of diagnosis of a bipolar disorder, and schizoid personality disorder. The relevant question, then, is whether these severe impairments prevented Plaintiff from performing work. It should be noted that though Dr. Findley was Plaintiff's treating mental health provider, at no time during her treatment of Plaintiff did she make any indication that Plaintiff was unfit for work or, further, that Plaintiff should discontinue going to college.

Plaintiff additionally argues that the ALJ improperly relied upon Dr. Singer's opinion as this opinion was made two years prior to the hearing. However, despite the fact that Dr. Singer's opinion was made two years prior to the hearing, Dr. Singer's opinion, which was made on February 1, 2007 is consistent with Dr. Vance's observations as set forth above. Moreover, it is not the time of the hearing that is relevant. As stated in 20 CFR § 404.1512(d), it is the ALJ's responsibility to "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [his] application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before [claimant] filed [his] application." Here, claimant filed an application for supplemental security income on January 30, 2007 alleging that her disability began on January 10, 2007. Therefore, Dr. Singer's opinion of February 1, 2007 is relevant to the ALJ's decision, even though it was two years prior to Plaintiff's hearing. After all, if Plaintiff alleges that her disability began on January 10,

2007, an evaluation any time after the alleged onset date of disability should indicate that Plaintiff was disabled.

Plaintiff additionally argues that the ALJ failed to develop the record. However, "there is no indication that the ALJ felt unable to make the assessment he did" and, furthermore, as shown throughout this opinion, the ALJ's opinion is supported by substantial evidence. *Tellez v. Barnhart*, 403 F.3d 953. Plaintiff finally argues that the ALJ did not set forth sufficient reasoning when rejecting the opinion of Plaintiff's treating physician. However, as set forth above, the evidence as a whole supports the ALJ's evaluation of Dr. Findley's credibility and "deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case." *Draper v. Barnhart*, 425 F.3d 1127, 1130.

### III. The ALJ properly evaluated Plaintiff's RFC.

Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's physical RFC ("P-RFC") and Plaintiff's mental RFC ("M-RFC"). With regard to the P-RFC assessment, Plaintiff argues the ALJ erred when making this decision as there is no medical evidence in the record which would allow the ALJ to formulate an accurate P-RFC assessment; as it did not obtain an MSS from Dr. Vance; and as it did not perform a "function-by-function" analysis.

First, it should be noted that the ALJ's P-RFC is supported by substantial evidence on the record as a whole. Though an ALJ's assessment of a claimant's RFC is a medical question and must be supported by some medical evidence of the claimant's ability to function in the workplace, an ALJ is not limited to exclusively considering medical evidence when performing an RFC assessment. *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007). Moreover, it should be noted that it is the Plaintiff's burden to prove her RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.

2001). Here, the ALJ concluded that Plaintiff's degenerative disc disease and history of compression fracture at T9 constituted a severe impairment. However, the ALJ concluded that these impairments did not prevent Plaintiff from performing medium work with particular limitations. This conclusion is supported by Dr. Vance's records. For example, Dr. Vance's treatment notes of October 30, 2008, the most recent treatment that is set forth in the record, set forth no limitations on Plaintiff's mobility and, further, states that examination of Plaintiff's cervical spine reveals "no swelling, edema or erythema, normal strength and tone, no laxity or crepitus, no palpable step off, no known fractures or deformities and normal posture" and, furthermore, noted that Plaintiff's muscle strength was 5/5 with the exception of Plaintiff's right arm flexors and right hand flexors which were 4/5. In fact, at no point in Dr. Vance's treatment notes does he restrict Plaintiff's physical activities. Though the ALJ did not mention each particular fact that it relied upon when making its decision,"an ALJ's failure to cite specific evidence does not indicate that it was not considered." *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007). It is also significant that Plaintiff's attorney began the hearing by stating the "issues here aren't physical. She has some mild lumbar problems, but not significant." Furthermore, as substantial evidence on the record as a whole supports the ALJ's decision, the ALJ did not err when it did not obtain an MSS from Dr. Vance.

Plaintiff additionally argues that the ALJ erred as it failed to perform a "function-by-function" analysis of Plaintiff's capabilities. The Court rejects this argument as Plaintiff cites to no authority that requires an ALJ to discuss in an opinion every single limitation that a Plaintiff may have. Also supporting the Court's determination is the fact that even if what Plaintiff claims is an error, such an error would be nothing more than a "deficiency in opinion-writing technique" which would not warrant reversal, because it is clear that the ALJ carefully considered Plaintiff's relevant

10

limitations throughout his opinion, as noted above. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011)(noting that an "arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome")(internal citation and quotations omitted).

With regard to Plaintiff's M-RFC, Plaintiff argues that the ALJ erred as it ignored the treating diagnoses and medication regimen of Dr. Findley, as supported by Dr. Olomon, and relied upon the decision of Dr. Singer. However, as addressed above, the ALJ did not err in discrediting the credibility of Dr. Findley's decision, as supported by Dr. Olomon, and relying on the opinion of Dr. Singer when coming to its opinion. Moreover, the ALJ's M-RFC assessment is consistent with the opinion of Dr. Singer, as set forth in her MSS. For example, Dr. Singer concluded that Plaintiff had moderate difficulties in maintaining social function; accordingly, the ALJ stated that Plaintiff should have no public contact or customer service duties, should have no more than minimal contact with co-workers and/or supervisors and, further, should not be involved with teamwork duties. Dr. Singer also concluded that Plaintiff had mild difficulties in maintaining concentration, persistence or pace; accordingly, the ALJ concluded that Plaintiff was limited to simple repetitive type job instructions.

Plaintiff additionally argues that, because the ALJ relied upon the opinion of Dr. Singer, the vocational expert's testimony cannot be considered substantial evidence; however, as stated above, the ALJ did not err in relying upon the opinion of Dr. Singer when reaching its opinion and, thus, the vocational expert's testimony, which relies upon Dr. Singer's findings, is relevant. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)("[a] hypothetical question posed to a vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record

11

accepted as true by the ALJ."). For these reasons, the Court finds that the ALJ properly assessed Plaintiff's P-RFC and M-RFC.

## IV. The ALJ did not err by failing to consider new evidence which was submitted to the appeals council.

Plaintiff finally argues that the ALJ erred as it failed to consider new evidence which was submitted to the appeals council. The evidence to which Plaintiff refers is: Dr. Olomon's diagnosis of April 30, 2009, Dr. Findley's diagnosis of May 8, 2009, and Dr. Olomon's diagnosis of June 4, 2009. Where, as here, "the Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

However, even if these records were before the ALJ, the ALJ had reason to discount the credibility of these records as, as shown above, Dr.Findley's opinion, as supported by Dr. Oloman's opinion, is not consistent with the record evidence as a whole. For these reasons, the new evidence does not change the fact that the ALJ's decision was supported by substantial evidence on the record as a whole.

## CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the decision of the ALJ.

**IT IS SO ORDERED.**

DATED: May 23, 2012    */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT